**Robert E. SCROGGINS,**
**Plaintiff-Appellant,**

v.

**UNIDEN CORPORATION OF AMER-ICA and American Telephone and Telegraph Co., Defendants-Appellees.**

**No. 03A01–8611–CV–301.**

Court of Appeals of Indiana,
First District.

April 16, 1987.

Rehearing Denied June 3, 1987.

Timothy J. Vrana, Sharpnack, Bigley, David & Rumple, Columbus, for plaintiff-appellant.

Richard R. McDowell, Keith A. Kinney, Hill, Fulwider, McDowell, Funk & Mathews, Indianapolis, Wayne C. Kreuscher, F. Samuel Eberts, III, Eric L. Zalud, Barnes & Thornburg, Indianapolis, for defendants-appellees.

NEAL, Judge.

STATEMENT OF THE CASE

Plaintiff-appellant, Robert E. Scroggins (Scroggins), has perfected his interlocutory appeal from the denial by the Bartholomew Circuit Court of his attempt to discover any subjective self-critical analysis of products filed by defendant-appellees, Uniden Corporation of America and American Telephone

and Telegraph Company (Uniden), with the Consumers Products Safety Commission (CPSC).

We reverse.

## STATEMENT OF THE RECORD

This is a products liability action involving the use of Uniden's Nomad 400 Cordless Telephone. Scroggins alleges that he suffered a loss of hearing when it rang in his ear. Scroggins sought discovery by interrogatories of communication between Uniden and the CPSC. Uniden objected and sought a protective order on the basis that any communication between it and the CPSC was privileged and was not subject to discovery in civil litigation. The trial court held that a self-critical analysis filed by Uniden was not discoverable, and granted the protective order. However, the trial court did not deny the discovery of any objective data underlying any such reports.

## ISSUE

The sole issue, as stated by Scroggins, is as follows:

Whether in a products liability action in which the plaintiff is seeking punitive damages, Indiana courts should create for a manufacturer, distributor, retailer, or other company in the chain of distribution of the product, a common law privilege against disclosure of self-critical analysis in reports the company is required to make pursuant to federal statute, when neither federal nor state statutes recognize such a privilege.

## DISCUSSION AND DECISION

Under the Consumer Products Safety Act, 15 U.S.C. secs. 2051–2083, the CPSC has broad powers to police the production and sale of goods as to hazardous qualities which may endanger the safety of consumers. Under the Act, manufacturers, distributors, and retailers are required to report to the CPSC defects in goods that would create a substantial hazard. Uniden claims that such self-critical analysis reports are privileged communication, are not subject to discovery, and are not admissible into evidence. It argues that there is a strong societal and federal interest in promoting frank communication with the

CPSC, and failure to protect the self-critical analysis will deter open reporting and frustrate the strong federal interest.

The trial court and Uniden rely heavily upon *Roberts v. Carrier Corp.*, 107 F.R.D. 678 (N.D.Ind.1985), and *Ashley v. Uniden Corp. of America*, Civil No. SA–84–CA–2383 (W.D.Texas July 23, 1986) (order denying motion to compel). The court in *Ashley* stated, at 2–3:

"The need to encourage full and frank disclosure of information to the government regarding defective products is of crucial importance to the consuming public. The success of the reporting scheme would be severely undercut if manufacturers feared that their frank disclosures might be used against them in lawsuits."

*Roberts* noted that the Act regulates disclosure of information by the CPSC, but not by the manufacturer, and, in regard thereto, contains the following exception:

"The provisions of this paragraph shall not apply to the public disclosure of information with respect to a consumer product which is the subject of an action brought under section 2061 of this title, or which the Commission has reasonable cause to believe is in violation of section 2068(a) of this title, or information in the course of or concerning a judicial proceeding."

15 U.S.C. sec. 2055(b)(5). Based thereon, *Roberts* held that the Act itself did not forbid civil discovery of critical self-analysis reports. Nevertheless, *Roberts* held that a common law privilege existed which made such reports privileged and not subject to discovery, citing the following authorities: "*Jamison v. Storer Broadcasting Co.*, 511 F.Supp. 1286, 1296–97 (E.D. Mich.1981); *Penk v. Oregon State Bd. of Higher Educ.*, 99 F.R.D. 506 (D.Ore.1982); *Resnick v. American Dental Ass'n.*, 95 F.R.D. 372, 374 (N.D.Ill.1982); *O'Connor v. Chrysler Corp.*, 86 F.R.D. 211 (D.Mass. 1980); *Banks v. Lockheed-Georgia Co.*, 53 F.R.D. 283 (N.D.Ga.1971)." *Roberts, supra* at 684.

In *Zahorik v. Cornell University*, 98 F.R.D. 27, 32 (N.D.N.Y.1983), authorities permitting and denying discovery of self-critical analysis were reviewed:

"Plaintiffs have requested identification and production of all affirmative action plans of defendant University. They claim that the weight of available authority supports their position that such plans are discoverable, at least after the entry of an appropriate protective order. *Ligon v. Frito-Lay, Inc.*, 19 FEP Cases 722 (N.D.Tex.1978); *EEOC v. ISC Financial Corp.*, 16 FEP Cases 174 (W.D. Mo.1977); *Dickerson v. United States Steel Corp.*, 14 FEP Cases 1448 (E.D.Pa. 1976). Not surprisingly, defendant claims that its affirmative action plans are clearly beyond the bounds of the federal discovery rules. *McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53 (E.D.Pa. 1979); *Sanday v. Carnegie-Mellon University*, 22 Fed.R.Serv.2d 1424 (W.D.Pa 1975) [Available on WESTLAW, DCTU database]. As can be seen from the above example, the question of whether affirmative action plans are discoverable in a Title VII action is far from being subject to a clear answer. *Compare O'Connor v. Chrysler Corp.*, 86 F.R.D. 211 (D.Mass.1980) *with Ford v. University of Notre Dame*, 29 FEP Cases 1710 (N.D.Ind.1980) *and Rodgers v. United States Steel Corp.*, 12 FEP Cases 100 (E.D.Pa.1975).

In arriving at the above decisions, the courts used various factors and policies. For example, some courts have held that it would be unfair to make a defendant disclose the confidential self evaluations and analyses contained in these plans when Title VII requires this information to be compiled. Other courts have held the information to be discoverable, subject only to the entering of an appropriate protective order. Finally, some courts have ordered that the factual and data portions of the plans be disclosed but that those portions of the plan containing critical self analysis mandated by law need not be disclosed. For a recent discussion of the so-called 'critical self analysis privilege,' *see Resnick v. American Dental Association*, 95 F.R.D. 372, 34 Fed.R.Serv.2d 1371 (N.D.Ill.1982). While the latter option of having defendant delete those portions of the plans containing critical self analysis is appeal-

ing, it presents a definite problem in the area of monitoring. Considering the bitter discovery disputes in this litigation to date, the Court declines to exercise this option or to follow the lead of the court in *O'Connor v. Chrysler* and conduct an *in camera* review to check compliance with the court order. Therefore, the Court finds that defendant's affirmative action plans are discoverable." (Footnote omitted.)

Additional cases are cited which apply the privilege. *Jamison v. Storer Broadcasting Co.*, 511 F.Supp. 1286 (E.D.Mich.1981); *Penk v. Oregon Board of Higher Education*, 99 F.R.D. 506 (D.Ore.1982). Additional cases are cited which reject the privilege. *In re Burlington Northern, Inc.*, 679 F.2d 762 (8th Cir.1982); *Ford v. University of Notre Dame Du Lac*, 24 E.P.D. sec. 31,203 (N.D.Ind.1980) [Available on WESTLAW, DCTU database]; *Witten v. A.H. Smith & Co.*, 100 F.R.D. 446 (D.Md. 1984); *Equal Employment Opportunity Commission v. I.S.C. Financial Corp.*, 14 E.P.D. sec. 7729 (W.D.Mo.1977) [Available on WESTLAW, DCTU database]. Clearly, a split of authority exists in the federal courts. No state court decisions are found addressing the question.

It is stated in 97 *C.J.S. Witnesses* secs. 252–254 (1957), that the general rule is that privilege is a matter of statute and there is no privilege absent a statute. Such evidentiary matter is to be determined by the law of the forum. Our examination of the Indiana cases reveal that the Indiana courts have followed this rule. In *Cissna v. State* (1976), 170 Ind.App. 437, 352 N.E.2d 793, *trans. denied*, the court refused to create a parent-child privilege. It noted that by statute privilege was granted under IND.CODE 34–3–5–1 to reporters; under IND.CODE 20–6–20–2 to school counselors; under IND.CODE 33–12–2–22 to probation officers; under IND.CODE 33–12–2–22 to psychiatrists; under IND. CODE 34–1–14–5 to insane persons, children under 10 years, attorneys, physicians, clergymen, and spouses; and under IND. CODE 25–2–1–23 to accountants. The court concluded:

"There is no such privilege conferred upon the parent-child relationship. Ciss-

na cites no authority (except 'Natural Law') for the proposition that there is or should be such a privilege. In the absence of such authority, it would be presumptuous for this court to proclaim the privilege extant in the State of Indiana." 170 Ind.App. at 439–40, 352 N.E.2d at 795.

In *Matter of L.J.M.* (1985), Ind.App., 473 N.E.2d 637, 642, in denying privilege to a non-certified psychologist under IND. CODE 25–33–1–17, the court said "Evidentiary privileges are generally disfavored and must be strictly construed." In *General Accident, Fire and Life Assurance Co. v. Tibbs* (1936), 102 Ind.App. 262, 269, 2 N.E.2d 229, 233, in denying a privilege to a nurse because no statute permitted it, the court stated:

"It is argued by appellee that public policy demands that nurses be included within the privileged class. This is a matter solely for the legislature and the statute could be extended to cover nurses only by it and not by judicial construction."

In *Ernst & Ernst v. Underwriters National Assurance Co.* (1978), 178 Ind.App. 77, 381 N.E.2d 897, *trans. denied,* a case involving privilege of an accountant under IND.CODE 35–2–1–23 in a malpractice case, the court noted that it was a fundamental principle that the public is entitled to every person's evidence. Most privileges were unknown at common law and are particularly disfavored. Privileges are strictly construed to limit their application. Other cases address the above principles. *See Parkview Memorial Hospital, Inc. v. Pepple* (1985), Ind.App., 483 N.E.2d 469, *trans. denied; Hunter v. State* (1977), 172 Ind.App. 397, 360 N.E.2d 588, *trans. denied.*

Research has not produced a single privilege in Indiana that is not statutory. Based upon that research and the above authorities, it is our opinion that no privilege against production of self-critical analysis exists in Indiana. All privileges are statutory and the creation thereof is the sole power of the legislature.

While the cases which apply the privilege denying discovery of a self-critical analysis make recitals to the effect that such privilege is necessary for open reporting and the success of the program, this recital is never explained nor demonstrated. It is a bald assumption. It occurs to us that if a manufacturer files a self-critical analysis which demonstrates that it was marketing a hazardous product, the CPSC would instantly order it to cease and desist. If the CPSC did not order it to desist, one may assume either that the hazard was not apparent, or that the CPSC was not doing its duty. Additionally, a manufacturer could not, with any justice, file a self-critical analysis reflecting the dangerous propensity of an article, knowingly continue to market the article, and then claim a privilege. We believe that a responsible manufacturer who discovered a dangerous article and filed a self-critical analysis reflecting the danger, would cease distribution of it, or at least be ordered to cease and desist by the CPSC. An irresponsible manufacturer would misrepresent the hazard in the first place. In essence, we are wholly unpersuaded that the privilege would appreciably aid the program. In any event it is a legislative matter for either Congress or our legislature. Neither body has created such a privilege, though they have demonstrated they know how. It is not the prerogative of this court to create one.

Uniden argues that any discovery matter is addressed to the sound discretion of the trial court, and its ruling will not be disturbed absent a showing of abuse of discretion. We agree. However, here, the trial court denied discovery specifically on the basis of a privilege which we have held does not exist. *See Parkview Memorial Hospital, supra,* for a like ruling.

For the above reason, this cause is reversed and the trial court is directed to grant discovery of the requested documents. The trial court may enter appropriate protective orders to prevent unnecessary publication of the matters discovered.

Judgment reversed.

ROBERTSON and MILLER, JJ., concur.