**Lori DEASY–LEAS, Amee McKim, and Timothy Dooley, Appellants,**

v.

**Matthew LEAS, and Lisa Dooley, Appellees.**

No. 02A03–9708–CV–277.

Court of Appeals of Indiana.

March 25, 1998.

Rehearing Denied May 27, 1998.

Joshua I. Tourkow, Alisa L. Rude, Tourkow, Crell, Rosenblatt & Johnston, Fort Wayne, for Appellants.

Robert J. Bishop, Fort Wayne, Guardian Ad Litem.

Stephen P. Rothberg, Fort Wayne, for Appellees.

## OPINION

HOFFMAN, Judge.

Appellants Lori Deasy–Leas and Timothy Dooley are parties to separate custody proceedings pending in Allen Circuit Court which share interest in the same issue regarding the discoverability of a guardian *ad litem's* entire file. At the time these interlocutory proceedings commenced, Amee

McKim was the guardian *ad litem* in both cases. After a hearing was held before this Court on August 15, 1997, an order was issued which *inter alia* consolidated the two causes for appeal and continued the previously granted temporary stay "until such time as a ruling is made on an Appellate Rule 4(B)(6) motion which has not yet been filed or until further order of this Court." The facts relevant to resolution of the appeal are recited below.

On April 23, 1997, Matthew R. Leas filed his notice of discovery directed to the guardian *ad litem*. On April 25, 1997, Lisa Dooley filed her notice of discovery requesting production of the guardian *ad litem's* file. On May 13, 1997, in the Leas case, and on May 15, 1997, in the Dooley case, the guardian *ad litem* filed motions to quash the discovery requests and further requested protective orders pursuant to Ind.Trial Rules 26(C) and 45(B) for:

> [the] complete file[s] on [the Dooleys and their children, and Lori Deasy–Leas and the Leas children] as Guardian Ad Litem, including but not limited to any and all correspondence, communications, work papers, notes of impressions, documents forwarded, documents received, and file records, along with any time statements or record of services performed in this action.

On June 10, 1997, the trial court ruled in both cases:

> that I.C. 31–1–11.5–28 does not confer an attorney/client privilege upon the guardian ad litem/child relationship in that the guardian ad litem is appointed to represent the child's 'best interests' as opposed to the child himself or herself. There is no Indiana statute or trial rule which imposes any confidentiality or privilege upon the guardian ad litem/child relationship.
>
> Guardian ad litem's Motion to Quash is denied and for Protective Order is denied.

On July 31, 1997, arguments were heard pertaining to *inter alia* the appellants' and the guardian *ad litem's* motions to correct error and for a stay; petitions for certification for interlocutory appeal; the guardian *ad litem's* petition for appointment of an attorney to represent the guardian *ad litem* or in the alternative an allowance for fees; as

well as appellees' motion to strike. The trial court denied the guardian *ad litem's* request for appointment of counsel or in the alternative fees. The other matters were taken under advisement.

On August 1, 1997, the trial court denied the motions to correct error and the motion to strike. After finding that the guardian *ad litem* was not a party to the proceedings, the guardian's petition for certification of the issue for interlocutory appeal was denied; however, the appellants' certification petition was granted. The court lifted the stay of execution and ordered the guardian to comply with the discovery request within ten days. Ultimately, this Court issued an immediate temporary stay and determined that the guardian is a party to these proceedings. This appeal ensued.

At the time of the court's August order, IND.CODE § 31–1–11.5–28, the statute referred to in the June order, had been repealed. Neither the trial court nor the parties referred to the newly enacted and recodified sections of the code. Thus, the parties' briefs do not analyze the effect, if any, of the repeal of the previous statutes and their recodification and amendment. By Public Law 1–1997, Sec. 157, effective July 1, 1997, the legislature repealed Chapter 11.5 entitled Actions for Dissolution of Marriage, Legal Separation, Child Support, and Child Custody. The same public law recodified and amended the statutes concerning child custody. P.L. 1–1997, Sec. 9.

Generally, amendatory acts are given prospective effect only, unless retrospective application is expressly provided therein. *Dept. of Env. Mgt. v. Chemical Waste Mgt.*, 604 N.E.2d 1199, 1204 (Ind.Ct.App.1992). Excepted from this general rule are statutes remedial in nature. *Bd. of Dental Examiners v. Judd*, 554 N.E.2d 829, 832 (Ind.Ct.App. 1990). Also, if a new statute is procedural in nature and does not create new or take away vested rights, it will not fall within the general rule against retrospective operation of statutes and will be applied to all cases pending at and subsequent to its effective date. *McGill v. Muddy Fork of Silver Creek Watershed*, 175 Ind.App. 48, 54–55, 370 N.E.2d

365, 370 (1977). If portions are substantive and portions are procedural, the procedural components will operate retroactively to the extent that they do not harm vested rights. *See Brown v. Metropolitan School Dist. of Lawrence Twp.*, 945 F.Supp. 1202, 1205 (S.D.Ind.1996). Here, the legislature repealed, reenacted and amended the entire body of law concerning family matters.[1] Hereinafter, the discussion will focus on the newly amended code. Arguably, the portions of the statutes with which we are concerned appear to be remedial and procedural. Considering the nature of child custody and the trial court's ongoing jurisdiction, it is unlikely that the legislature intended to exempt family matters from the new provisions merely because they were initiated years previously. Also, at the time of the trial court's order on the appellants' motions to correct error, the newly enacted versions were in effect. Finally, the new versions will be referenced inasmuch as our determination does not hinge specifically upon the relationship between the old statutes and the new.

Dispersed throughout the recodified statutes on family law are various sections which treat issues concerning guardians *ad litem* based upon the types of proceedings. A newly enacted enabling chapter, IND.CODE § 31–17–6–1 through 31–17–6–9 (1997 Supp.), allows the appointment of guardians *ad litem* and special advocates in proceedings for determinations and modifications of child custody under IND.CODE § 31–17–2–1 through 31–17–2–24 (1997 Supp.).[2] The general enabling provision which defines the role of guardians *ad litem* states:

> A guardian ad litem or court appointed special advocate shall represent and protect the best interests of the child. A guardian ad litem or court appointed spe-

cial advocate serves until the court enters an order for removal.

IND.CODE § 31–17–6–3 (1997 Supp.).

Within the newly enacted provisions specifically regarding actions for child custody or modification of child custody, two statutes expressly refer to guardians *ad litem.* IND. CODE § 31–17–2–12 (1997 Supp.) provides that a court may appoint an investigator, which may be a guardian *ad litem*, for an investigation and report on custody.[3] The investigation and report provision specifically allows the investigator access to information from physicians, psychiatrists or other professionals without obtaining permission, unless the child is capable of forming a rational independent judgment. If all conditions are met, the investigator's report, together with the investigator's file, the diagnostic reports and the names and addresses of those consulted, must be made available to the other parties. In pertinent part, the statute provides:

> (a) In custody proceedings after evidence is submitted upon the petition, if a parent or the child's custodian so requests, the court may order an investigation and report concerning custodial arrangements for the child. The investigation and report may be made by any of the following:
>
> * * *
>
> (5) A guardian ad litem or court appointed special advocate appointed for the child by the court under IC 31–17–6 (or IC 31–1–11.5–28 before its repeal).
>
> (b) In preparing a report concerning a child, the investigator may consult any person who may have information about the child and the child's potential custodian arrangements. Upon order of the court, the investigator may refer the child to professional personnel for diagnosis. The

---

1. At the same time, the entire statutory framework for family law, including *inter alia* juveniles, paternity, human reproduction, adoption, termination of parent-child relationships, and the Uniform Interstate Family Support Act, were all repealed and recodified with various amendments.

2. The guardian *ad litem* enabling statute also applies to visitation rights of noncustodial parents under IND.CODE § 31–17–4–1 through 31–

17–4–10 (1997 Supp.) and to proceedings for costs and attorneys' fees which include Title IV–D [42 U.S.C. 651 through 669, the federal Social Security Act] under IND.CODE § 31–17–7–1 through IC 31–17–7–2 (1997 Supp.).

3. The other statute, IND.CODE § 31–17–2–16 (1997 Supp.), provides that a court, a party, the child, or a guardian *ad litem* may all request counseling for the child.

investigator may consult with and obtain information from medical, psychiatric, or other expert persons who have served the child in the past without obtaining the consent of the parent or the child's custodian. However, the child's consent must be obtained if the child is of sufficient age and capable of forming rational and independent judgments. If the requirements of subsection (c) are fulfilled, the investigator's report:

(1) may be received in evidence at the hearing; and

(2) may not be excluded on the grounds that the report is hearsay or otherwise incompetent.

(c) the court shall mail the investigator's report to counsel and to any party not represented by counsel at least ten (10) days before the hearing. The investigator shall make the following available to counsel and to any party not represented by counsel:

(1) The investigator's file of underlying data and reports.

(2) Complete texts of diagnostic reports made to the investigator under subsection (b).

(3) The names and addresses of all persons whom the investigator has consulted.

(d) Any party to the proceeding may call the investigator and any person whom the investigator has consulted for cross-examination. A party to the proceeding may not waive the party's right of cross-examination before the hearing.

IND.CODE § 31–17–2–12 (1997 Supp.).

■ The above section requires disclosure if the guardian *ad litem* is appointed to conduct an investigation and make a report. Here, the record does not indicate that the guardian *ad litem* was appointed specifically for the purpose of an investigation and report. Further, the record does not disclose that the threshold triggering mechanism to order an investigation and report, that is "custody proceedings *after evidence is submitted upon the petition,*" has been met. *Id.* (Emphasis added.) Lacking the triggering circumstances, the statute is inapplicable to the present circumstances. However, a finding that the statute requiring disclosure is inapplicable does not *ipso facto* lead to the conclusion that the communications contained within the guardian's files are privileged.

■ Indiana, as most other jurisdictions, has not enacted a statutory privilege for communications between guardians *ad litem* and their charges. *See* Roy Stuckey, *Guardians Ad Litem as Surrogate Parents: Implications for Role Definition and Confidentiality,* 64 Fordham L.Rev. 1785, 1792 (1996) [hereinafter Stuckey, *Confidentiality* ] (confidentiality between children and guardians *ad litem* not protected under common law nor in most jurisdictions). Moreover, this Court may not create a specific privilege for guardians *ad litem.* In fact, Indiana follows the general rule that privileges are created by statute and no privilege exists absent a statute. *Scroggins v. Uniden Corp. of America,* 506 N.E.2d 83, 85 (Ind.Ct.App.1987) (determining that no privilege existed which would forbid discovery of a products manufacturer's critical self-analysis reports, noting that federal courts are split on the issue).

■ This Court in *Scroggins* noted that Indiana courts have refused to create a parent-child privilege. *Id.; see also Cissna v. State,* 170 Ind.App. 437, 439–440, 352 N.E.2d 793, 795 (1976). As recognized in *Scroggins,* many statutory privileges in that vein exist: school counselors, psychologists, social workers, physicians, clergy, attorneys, and spouses.[4] In rejecting the notion that a privilege

4. For example, IND.CODE § 25–2.1–14–1 (1993 Ed.) provides: "A certified public accountant, an accounting practitioner, or any employee is not required to divulge information relative to and in connection with any professional service as a certified public accountant, a public accountant, or an accounting practitioner." The psychologist privilege appears at IND.CODE § 25–33–1–17 (1993 Ed.): "A psychologist licensed under this article may not disclose any information acquired from persons with whom the psychologist has dealt in a professional capacity, except under the following circumstances: ... (6) Circumstances under which privileged communication is abrogated under the laws of Indiana." *See Ross v. Delaware County Dept. of Welfare,* 661 N.E.2d 1269, 1270–1271 (Ind.Ct.App.1996) *trans. den.* 667 N.E.2d 182 (psychologist-patient privilege abrogated in proceedings to terminate parent-child relationship, abrogating confidentiality

could be based upon "natural law," this Court reiterated that " '[e]videntiary privileges are generally disfavored and must be strictly construed.' " *Scroggins*, 506 N.E.2d at 85–86, (quoting *Matter of L.J.M.*, 473 N.E.2d 637, 642 (Ind.Ct.App.1985)).

Accordingly, the portion of the trial court's order stating that "no Indiana statute or trial rule ... imposes any confidentiality or a privilege upon the guardian ad litem/child relationship" is correct to the extent that no statute or trial rule is specific to guardians *ad litem*. However, in the absence of a statute specifically according a privilege to guardians *ad litem*, the question devolves upon the general statutory design and discovery rules on confidentiality, considering the role of the guardian *ad litem*.

▇▇ Within the custody and modification statutes, the legislature enacted a new general provision on confidentiality of interviews, reports and investigations. The statute[5] provides:

If the court finds it necessary to protect the child's welfare that the record of any interview, a report, or an investigation in a custody proceeding not be a public record, the court may make an appropriate order accordingly.

IND.CODE § 31–17–2–20 (1997 Supp.).

The general confidentiality provision allows a court to make a determination, despite the statute requiring revelation of such reports, that the particular circumstances require confidentiality as to a "public record." *Id.*

This general confidentiality provision does not specifically apply to discovery or to parties.

▇▇ Turning to the discovery rules, provisions exist to protect confidentiality when requested by a party or other person from whom discovery is sought. The custody and modification provisions note that the proceedings "must comply with the Indiana Rules of Civil Procedure." IND.CODE § 31–17–2–2 (1997 Supp.). In relevant part, Ind.Trial Rule 26(C) provides:

**Protective Orders.** Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is being taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) that the discovery not be had;

(2) that the discovery may be had only on specified terms and conditions ...;

(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters;

(5) that discovery be conducted with no one present except the parties and their

---

of parents' statements and testing results). In IND.CODE § 25–23.6–6–1 (1997 Supp.) a privilege is granted to certified social workers or marriage and family therapists: "Matters communicated to a counselor in the counselor's official capacity by a client are privileged information and may not be disclosed by the counselor to any person, except under the following circumstances: ... (8) Circumstances under which privileged communication is abrogated under Indiana law." *See Stone v. Daviess Co. Div. of Children and Family Servs.*, 656 N.E.2d 824, 831 (Ind.Ct.App.1995) (social worker privilege is abrogated in proceedings for involuntary termination of parent-child relationship). Further, IND.CODE § 25–23.6–7–7 provides that a person who violates the privilege prescribed in IND. CODE § 25–23.6–6–1 "or who provides false documents under this chapter commits a Class A

misdemeanor." Until recent amendment, the violation constituted an infraction. Even if privileges are not favored, many exist and sometimes carry severe penalties when disregarded.

5. At the time of the court's original order in June 1997, a previous statute was in effect: IND. CODE § 31–1–11.5–23 (repealed 1997). The former statute, nominally a provision on "Hearings," contained subsection "(d) If the court finds it necessary to protect the child's welfare that the record of any interview, report, or investigation, in a custody proceeding, not be a public record, the court may make an appropriate order accordingly." At the time of the July 31, 1997 hearing on *inter alia* the motions to correct error, the new statute was in effect, specifically denominated "Confidentiality of interview, report, or investigation."

attorneys and persons designated by the court;

(6) that a deposition after being sealed be opened only by order of the court;

\* \* \*

(8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

Being fully applicable to custody and modification proceedings, a trial court may rely upon the protective powers of T.R. 26(C) when a guardian *ad litem* or any other party requests confidentiality. The other parties' rights to discovery are then safeguarded by the court's evaluation and determination.

█ Whether the legislature generally intended to accord communications by and about children some immunity may be answered by viewing other statutory privileges, the exceptions to the privileges, and the reporting requirements. The school counselor privilege is a prime example. IND.CODE § 20–6.1–6–15 (1997 Supp.) states:

Except as provided in IC 31–32–11–1, a school counselor is immune from disclosing privileged or confidential communication made to the counselor as a counselor by a student. Except as provided in IC 31–32–11–1, the matters communicated are privileged and protected against disclosure.

The exception is:

**Admissibility of privileged communications**

Sec. 1 The privileged communication between:

(1) a husband and wife;

(2) a health care provider and the health care provider's patient;

(3) a:

(A) certified social worker;

(B) certified clinical social worker;

(C) certified marriage and family therapist;

and a client of any of the professionals described in clauses (A) through (C);

(4) a school counselor and a student; or

(5) a school psychologist and a student;

is not a ground for excluding evidence in any judicial proceeding resulting from a report of a child who may be a victim of child abuse or neglect or relating to the subject matter of the report or failing to report as required by IC 31–33.

IND.CODE § 31–32–11–1 (1997 Supp.).

Article 33, referred to in the exception, treats reporting and investigating child abuse and neglect. Two of the stated purposes of Article 33 are to "encourage effective reporting of suspected or known incidents of child abuse or neglect" and to "provide rehabilitative services for an abused or a neglected child and the child's parent, guardian, or custodian." IND.CODE § 31–33–1–1 (1997 Supp.) *See Sims v. State*, 601 N.E.2d 344, 345–346 (Ind.1992) (Shepard, C.J., concurring in result) (although statutory privilege not in effect, communications to counselor made pursuant to court-ordered treatment in separate cause held confidential; defendant likely believed communications were confidential and would violate Fifth Amendment right against compelled self-incrimination); *Daymude v. State*, 540 N.E.2d 1263, 1266–1268 (Ind.Ct.App.1989) (abuse disclosed prior to psychological counseling did not abrogate the privilege for disclosure at criminal proceedings; purpose of abrogation of privilege to identify children in immediate need of protection was served prior to commencement of counseling).

Once reported, the information is cautiously disseminated. Child protection services must give notice of the existence and location of photographs, x-rays and physical medical examination reports to prosecuting attorneys and law enforcement agencies. IND.CODE § 31–33–2–4 (1997 Supp.). Further, the documents must be made available to guardians *ad litem* "for use in any judicial proceeding relating to the subject matter of a report made under this article and, to the extent permissible under the Indiana Rules of Trial Procedure,[6] to the adverse party in any proceeding arising under this article." IND.

---

**6.** See the discussion of T.R. 26(C) *supra,* the trial rules pertaining to depositions and discovery allow protective orders regarding discovery, including an order "that the discovery not be had." Ind.Trial Rule 26(C)(1).

CODE § 31–33–2–5 (1997 Supp.) (Footnote added.)

Additionally, the need for confidentiality and allowing children's speech some protection appears in the provisions for *in camera* interviews. The child custody statutes provide the trial court with discretion to conduct an *in camera* interview of the child or an interview in chambers with counsel present. IND.CODE § 31–17–2–9 (1997 Supp.). While the interview may be recorded and made a part of a record for purposes of an appeal, it is not necessary to do so. *Id.*

The specter of confidentiality is again raised in Chapter 3 of Article 33 providing for the establishment of a multi-disciplinary "community child protection team." IND. CODE § 31–33–3–1 (1997 Supp.). The team is composed of 11 members including school officials, law enforcement, court personnel, medical personnel and "[a] director of a court appointed special advocate or guardian ad litem program or the director's designee in the county in which the team is to be formed." *Id.* The members "are bound by all applicable laws regarding the confidentiality of matters reviewed by the team." IND. CODE § 31–33–3–8 (1997 Supp.)

If the legislature did not intend some form of confidentiality in proceedings regarding children in need of services or when a guardian *ad litem* is appointed to represent the "best interests" of the children, the purpose of the above statutes is perplexing. The privilege accorded communications between school counselors and students, who are for the most part minors, the confidentiality extended to the "community child protection team," the availability of *in camera* proceedings, and the incorporation of trial rules with protective components all portend an expectation of confidential communications by and about children, even those in need of services. Presumably, a request for confidentiality made by the guardian *ad litem* would prominently figure in any such determination.

Research on the topic of the confidentiality of communications made or revealed to guardians *ad litem*, discloses an undeveloped area of law. It may well be that legislatures have not yet determined the scope of the factors to be considered in a determination whether or not to carve out a statutory privilege for guardians. The territory is fraught with converging, sometimes conflicting, concerns. Arguably, the conflicting concerns are at the very heart of the move to appoint guardians *ad litem* or someone to act solely for the child's best interests. While a statutory privilege does not exist, perversely, much of the information to which the guardian has access is subject to a privilege.

The role of guardians *ad litem* is not precisely defined. *See* Stuckey, *Confidentiality, supra,* at 1793 (proper role of guardians *ad litem* that of surrogate parent; parents not asked to act as investigators or report to court and is improper to expect guardians to act as investigators). The general enabling statutes in Indiana, as do those in most states, describe guardians as officers of the court for the purpose of protecting and representing the best interests the child. *See* IND.CODE §§ 31–17–6–3 and 31–17–6–4. While the role of guardians *ad litem* is loosely defined, the statutes allow them broad discretion to access or initiate confidential communications. Beyond the communications made by the child to the guardian, the guardian's files will contain other confidential information. Statutorily, guardians have access to privileged communications between parties and their attorneys, their psychologists, and their physicians. The substance of these communications may not be discoverable otherwise.[7]

Moreover, if the guardian is in possession of records to which the parties are entitled, the parties can use the avenues open to them to discover those items from the primary sources. Any question as to the motives or impartiality of the guardian can be addressed through hearings or motions. The guardian is a party to the proceedings and is subject to examination and cross-examination. It is reasonable to assume that difficulties have arisen regarding the children prior to ap-

---

7. The entire statutory framework with regard to children is clear as to the reporting of instances of child abuse and neglect; even statutorily created privileges are qualified to except communications regarding child abuse and neglect.

pointment of a guardian *ad litem*. The legislative scheme, while not specifically offering a guardian *ad litem* privilege, contains the general confidentiality provisions. The general confidentiality provisions cast a shadow on the legislature's willingness to give parties *carte blanche* access to communications and investigations lest they prey upon familial difficulties at the children's expense.

What seems clear is that the appointment of the guardian should not be a discovery tool to be used by a party after waiting a sufficient amount of time for disclosures to be made.[8] Appointment of a guardian *ad litem* should not afford a short cut to privileged information. It is difficult to conceive how the appointment of the guardian should afford children less protection than that offered when no guardian is appointed. If an attorney was appointed to represent the child, as any other client, the client-attorney privilege would be a paramount feature of the communications regarding the proceedings.

The lack of a specific statutory privilege for guardians *ad litem* may stem from the ill-defined role of guardians *ad litem* who may act as advocates, surrogate parents, advisors, and/or investigators. Complicating matters further and even more challenging in terms of discerning the guardian's role and what types of information should remain confidential, is the situation when the guardian *ad litem* is an attorney. The attorney-client privilege is a cornerstone to legal representation. To say that an attorney acting as a guardian completely loses the shroud of confidentiality calls into question the efficacy of appointing guardians *ad litem* instead of attorneys to represent the child.

We are faced with such a situation in the present instance. Guardian McKim is an attorney. Here, the parties requesting the information attack the guardian for acting more as an attorney than as the guardian for the best interests of the children.[9] While admittedly the line is blurred when a guardian is also an attorney, the general duties are similar. Each is sworn to represent the best interests of the client or the charge. It is also noteworthy, that Guardian McKim's request for appointment of an attorney to represent the guardian was denied, leaving her no choice but to proceed in both her capacity as guardian and her capacity as an attorney. *See* IND.CODE § 31–17–6–5 (1997 Supp.) (providing for the appointment of counsel to represent the guardian *ad litem* ); *see also Robertson v. Central Jersey Bank & Trust Co.*, 834 F.Supp. 705, 709 (D.N.J.1993) (determining under New Jersey provisions similar to those in Indiana, that attorney appointed as guardian *ad litem* in probate proceeding could but was not acting as counsel in relationship with parents of child and specifically noting provision which allows guardian to hire counsel by leave of the court).

It is evident that those involved in the proceedings are unclear as to the exact role of the guardian in representing the child's best interest. In the present case, the

---

8. Blanket disclosure based upon a perceived lack of authority to protect information in the guardian's files is less appealing in the proceedings concerning the Leas children where the appellant complied with the court's order to attend counseling, the children attended counseling and the appellee attended no sessions. After some time had passed, appellee requested the entire contents of the guardian's file which had been amassed in an attempt to discern the best interests of the children. It is counterintuitive to offer a party an advantage as a reward for failing to comply with the court's order and the requests by the guardian *ad litem*.

Further, by ordering the parties to attend counseling, a component of disclosure is implicit in the order. Once the court has placed the parties in a position to disclose otherwise confidential material, careful consideration must be made in determining the circumstances for access. *Cf. Sims, supra,* 601 N.E.2d at 345–346 (ordering defendant to counseling in separate cause clothed communications in assumed confidentiality, purpose of counseling undermined if client's full and complete communications not protected); *Daymude, supra,* 540 N.E.2d at 1266–1268 (where defendant was effectively ordered to counseling within CHINS proceeding, psychologist-patient privilege not abrogated for use in criminal proceedings where reporting requirement had been fulfilled when abuse disclosed prior to psychological counseling).

9. The record discloses that appellees raised a question of disciplinary action against the guardian for acting as an attorney in advocating for the child. As noted, pursuant to IND.CODE § 31–17–6–5, the guardian requested appointment of an attorney. The request was denied.

guardian *ad litem* argued to the trial court that information, contained in her files, which she requested and received was with the tacit belief, by those involved, that the communications were confidential. Federal courts have suggested that statements made under the erroneous assumption that a privilege exists should be protected. *See Hueck v. State,* 590 N.E.2d 581, 584 (Ind.Ct.App.1992) (Hoffman, J., dissenting) (majority rejected assertion of attorney-client privilege and distinguished the reasoning in *Smale v. United States,* 3 F.2d 101, 101–102 (7th Cir.1924)).

■ In any event, this Court may not assume a legislative function and pronounce a guardian *ad litem* privilege where no statutory provision exists. Even when public policy would appear to demand a result, it is not a function of this Court to "in effect, rewrite a statute in order to render it consistent with our view of sound public policy." *Robinson v. Monroe County,* 663 N.E.2d 196, 198 (Ind. Ct.App.1996) (opinion denying rehearing acknowledging that clear language of statute unambiguously exempts certain individuals from abiding by safety requirements); *see also Boehm v. Town of St. John,* 675 N.E.2d 318, 321 (Ind.1996) (statute not unconstitutional "simply because the court might consider it born of unwise, undesirable, or ineffectual policies").

It appears that the safety net for children and families would operate more effectively if parents and children are offered the protective insulation of confidentiality in exchange for complete and frank disclosures. Analyzing the question from the standpoint of allowing a party to gain access to otherwise confidential information such as physicians' and psychologists' records, mental health records, school and testing records of children and the parents, it seems equally apparent that the lack of confidentiality may subvert the process. Nevertheless, as reiterated above, this Court may not edit or rewrite statutes in conformity with perceived public policy demands. The general confidentiality provisions and the protection provided by T.R. 26(C) are in place. A trial court may, especially when requested by a party acting with the mission to guard the children's best

interest, rely on those provisions to protect certain documents and communications.

Inasmuch as the trial court's judgment erroneously states that no statutes or trial rules exist under which a guardian *ad litem's* file, or a portion thereof, may be protected from discovery, the cause is reversed and remanded for further proceedings consistent with this decision.

Reversed and remanded.

GARRARD and RUCKER, JJ., concur.