

I N T H E

# Court of Appeals of Indiana

Goalsetter Systems, Inc. d/b/a Escalade Sports,

*Appellant*

v.

Estate of Nolan Gerwels, et al.,

*Appellee*



FILED

Feb 28 2024, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

February 28, 2024

Court of Appeals Case No.
23A-CT-1896

Appeal from the St. Joseph Circuit Court

The Honorable John E. Broden, Judge

Trial Court Cause No.
71C01-1807-CT-340

**Opinion by Judge Bailey**
Judges Crone and Pyle concur.

**Bailey, Judge.**

# Case Summary

[1] In a products liability and wrongful death action brought by the Estate of Nolan Gerwels ("the Estate") against Goalsetter Systems, Inc. d/b/a Escalade Sports ("Goalsetter") and other defendants, this Court has accepted a discretionary interlocutory appeal challenging the grant of the Estate's motion to compel Goalsetter to produce documents, including some exchanged between Goalsetter and the United States Consumer Product Safety Commission ("the CPSC"). We affirm.

# Issues

[2] Goalsetter presents the following issues for review:

> I. Whether the trial court abused its discretion in denying Goalsetter's request for a protective order and compelling the production of documents that the CPSC had refused to produce in response to the Estate's Freedom of Information Act, 5 U.S.C. § 552, ("FOIA") request; and

> II. Whether the trial court abused its discretion by failing to adequately protect Goalsetter's work product.

# Facts and Procedural History

[3] Fourteen-year-old Nolan Gerwels was killed on June 22, 2018, when a basketball goal detached from the wall of an in-home gymnasium and fell on

him. Gerwels' parents opened an estate, and on July 17, the parents, individually, and the Estate filed a complaint against Dick's Sporting Goods, the seller, Goalsetter, the manufacturer, and other defendants who had engaged in residential construction and equipment installation services.

[4] On November 28, 2018, the parties entered into a Stipulated Protective Order to "govern the production and handling of any protected information in this action." (Appellee's App. Vol. II, pg. 3.) Pursuant to the order, a party who produced protected information could designate it as "confidential" and a non-party would receive a copy of designated information only after agreeing to be bound by specific confidentiality terms. *See id.* The Estate requested discovery materials from Goalsetter and received materials that included communications from the CPSC to Goalsetter. Specifically, in response to Goalsetter's self-reporting to the CPSC of Gerwels' death, CPSC had stated in writing that it was taking no action at that time.

[5] In January of 2022, Goalsetter and the Estate's attorney each reported to the CPSC that there had been an adverse incident in Utah involving a Goalsetter basketball goal. Eventually, four separate incidents were reported. On October 27, 2022, the CPSC announced that Goalsetter had issued a recall of Goalsetter wall-mounted basketball goals, identifying the hazard as: "The basketball goal can detach from the wall and fall to the ground posing a serious impact injury hazard and risk of death." (*Id.* at 25.)

The Estate's attorney issued a FOIA request to the CPSC seeking, among other things, consumer reports of injuries from Goalsetter wall mount products, all records in the CPSC files, and correspondence between the CPSC and Escalade Sports after June 22, 2018. (Exhibit A.) The FOIA request was denied on February 2, 2023. In part, the denial letter provided that the CPSC Office of Compliance "has determined that disclosing these records would cause an articulable harm to the current investigation while the recall is still in monitoring status." (Exhibit A.)

The Estate requested supplemental discovery from Goalsetter, who provided some responsive materials and objected to the production of others. In pertinent part, Goalsetter asserted that materials provided by Goalsetter to the CPSC are protected by a privilege of self-critical analysis[1] and cannot be released to the Estate under the FOIA. Goalsetter also claimed that documents exchanged between it and a governmental entity are privileged trade secrets, confidential, and not subject to discovery under the Consumer Product Safety Act, 15 U.S.C. § 2055 ("the CPSA").

On February 24, 2023, the Estate filed a motion to compel Goalsetter to produce discovery materials in response to the Estate's first, second, third, and

---

[1] The Consumer Products Safety Act requires that manufacturers, distributors, and retailers report to the CPSC defects in goods that would create a substantial hazard. 15 U.S.C. § 2064. Reports made in accordance with that requirement are sometimes referred to as self-critical analysis reports. *See Scroggins v. Uniden Corp. of America*, 506 N.E.2d 83, 84 (Ind. Ct. App. 1987), *trans. denied*.

fourth requests for production.[2]  The Estate sought discovery materials inclusive of:  correspondence between Goalsetter and the CPSC; communications between Goalsetter and consumers; and communications between Goalsetter and other persons such as independent contractors or inspectors.  Other requests concerned research and development and test reports related to such things as dynamic load, static load, and engineering stress.

[9]  Goalsetter filed a response and, regarding post-recall supplementation, Goalsetter objected "to any and all requests that seek information that may have been exchanged with the CPSC, prepared in anticipation or coordination with the CPSC, may otherwise be related to any investigation by the CPSC or to any recall, or may have been completed as part of communications and negotiations with any governmental entity, including the CPSC."  (Appellant's App. Vol. III, pg. 76.)  Goalsetter claimed that such documents are privileged trade secrets under the CPSA and the FOIA, attorney work product, and "protected by the privilege of self-critical analysis."  *Id.*  Finally, Goalsetter asserted that the release of such information would be harmful to the CPSC investigation and enforcement.  Goalsetter sought a corresponding protective order "that discovery related to any CPSC reporting, investigation, research, testing, training, or recall, including any internal communication and

---

[2] Specifically sought were materials in response to items 20, 21, 22, 26, 27, and 40 of the first request for production; items 9, 16, and 22 of the second request; item 2 of the third request; and items 1 through 27 of the fourth request.

communications with the CPSC and any documents exchanged, should be protected from discovery."[3] (Appellant's App. Vol. III, pg. 127.)

[10] The trial court conducted a hearing on March 28, 2023, at which argument of counsel was heard. Goalsetter advised the trial court that the CPSC had opened a new investigation in 2022 and had denied the Estate's FOIA request. On that basis, Goalsetter argued that "all from 2022 forward" constituted its "work product" and confidential materials "pursuant to CPSC guideline." (Tr. Vol. II, pg. 35.) The parties also presented arguments with regard to Indiana's non-recognition of a self-critical analysis privilege. The Estate argued that *Scroggins v. Uniden Corp. of America*, 506 N.E.2d 83, 86 (Ind. Ct. App. 1987), *trans. denied*, is controlling authority while Goalsetter argued that *Scroggins* was wrongly decided. The Estate argued that Goalsetter was at fault for failing to maintain a log of claimed work product items while Goalsetter deemed the Estate at fault for failure to pursue the administrative remedy of an appeal after the FOIA denial.

[11] On April 26, the trial court issued an order granting the motion to compel "subject to the limitations and restrictions set out in this Order." (Appealed Order at 6.) The limitations are described in the order as follows:

---

[3] In particular, the requested protective order involved: items 20, 21, 22, 26, and 40 of the first request for production; items 9 and 16 of the second request; item 2 of the third request; and items 7, 8, 10, 15, 16, 17, and 18 of the fourth request.

First, any and all discovery that is promulgated from Defendant to Plaintiffs as a result of this discovery request shall be properly marked and denoted as emanating from this particular discovery request; Second, the terms and condition[s] of the Court's November 28, 2018 Protective Order shall apply to discovery promulgated as a result of the granting of this Motion to Compel; Third, no discovery materials or references to these discovery materials may be used in subsequent motions or hearings in this cause without the parties having first sought leave of court to use such discovery materials and if such leave is granted, the materials shall be locked [sic] as confidential; and Fourth, in Granting this Motion to Compel, the Court is reserving ruling on materials that Defendant asserts are subject to the attorney-client privilege.

(*Id.* at 4.) The order disclosed the trial court's reasoning in considering the denial of the FOIA request non-dispositive:

this Court does want to emphasize that it has no interest in jeopardizing or undermining the important work of the Consumer Product Safety Commission. However, the Court does note that the CPSC's admonition or warning about the threat that the potential disclosure of information related to this case could have on the CPSC's ongoing investigation came in response to a FOIA request initiated by Plaintiffs' counsel. Any information disclosed pursuant to a FOIA request is without limits and may be published and disseminated to the world. However, that is not what is happening as a result of this Court's Order granting Plaintiffs' Motion to Compel. The Court believes it has placed stringent limitations on the dissemination of discovery materials promulgated from Defendant to Plaintiffs to ensure that the information is not publicly disclosed.

(*Id.* at 5.)

[12]     On May 9, Goalsetter requested that the trial court certify its April 26 order for interlocutory appeal[4] and issue a stay pending appeal. On June 30, the trial court conducted a hearing on Goalsetter's pending motions. At that hearing, the court advised the parties that it had reviewed the CPSC letter denying the FOIA request. The trial court characterized the communication as a "form letter" responding to a request the granting of which could have resulted in "the information [being] disseminated worldwide." (Tr. Vol. II, pg. 51.) Goalsetter argued that an interlocutory appeal was necessary to permit the Appellate Court to "address whether [the trial court] can produce that which the federal agency has decided cannot be produced." (*Id.* at 58.)

[13]     On July 21, the trial court certified its discovery order for interlocutory appeal and granted Goalsetter's motion for a stay. Pursuant to Appellate Rule 14(B)(2), this Court accepted jurisdiction of the appeal on September 15, 2023.

# Discussion and Decision

## Motion to Compel Production

[14]     Pursuant to Indiana Trial Rule 26(B), the scope of discovery is, in general:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other

---

[4] Indiana Appellate Rule 14(B)(1) provides that "[t]he trial court, in its discretion, upon motion by a party, may certify an interlocutory order to allow an immediate appeal."

party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

[15] Although the information available through discovery is broad, it is not all-inclusive. *Richey v. Chappell*, 594 N.E.2d 443, 445 (Ind. 1992). Rule 26(B)(1) requires that the information sought must be relevant, admissible, or reasonably calculated to lead to the discovery of admissible evidence, and not privileged. *Id.* Additionally, the Rule permits discovery of documents or tangible items prepared "in anticipation of litigation" only upon a showing that the party seeking discovery has a substantial need for the materials and is unable, without undue hardship, to obtain the substantial equivalent by other means. *Id.* Even with such a showing of hardship, however, the party seeking discovery is not "entitled to the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation." *Id.* "Our discovery rules are designed 'to allow liberal discovery with a minimum of court involvement in the discovery process.'" *Id.* (citing *Chustak v. No. Ind. Pub. Serv. Co.* (1972), 259 Ind. 390, 395, 288 N.E.2d 149, 152-3).

[16] "Discovery matters are fact-sensitive, and therefore, the ruling of the trial court is cloaked in a strong presumption of correctness on appeal." *Wright v. Mount Auburn Daycare/Preschool*, 831 N.E.2d 158, 162 (Ind. Ct. App. 2005), *trans. denied*. We will review a decision of the trial court regarding discovery matters only for an abuse of discretion. *Id.* An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances

before the court or when the trial court misinterprets or misapplies the law. *Id.* In general, we will not reverse a discovery order unless there has been a showing of prejudice. *Id.*

[17]    Goalsetter has sought protection of documents in its "CPSC file and documents and communications exchanged with the CPSC and Goalsetter." Appellant's Brief at 20. According to Goalsetter:

> The production of documents in a case where the CPSC has expressly stated doing so subject to FOIA would cause an "articulable harm" to its investigation, would, logically by extension, cause the same harm to Goalsetter's recall. Whether that is considered a "privilege" created by federal law, or renders such documents confidential pursuant to statue and common law, the end result should be that such documents are not discoverable.

*Id.* at 21. According to Goalsetter, the trial court has "substituted its judgment" for that of the CPSC, and "the Trial Court first should have considered federal law on the public availability of certain documents and the tests applied by the agency and federal courts in determining if CPSC materials are subject to civil discovery requests in related litigation." *Id.* at 17, 22. Goalsetter does not claim that CPSC criteria for public disclosure of information under the FOIA directly governs discovery in state court litigation.[5] Rather, Goalsetter contends

---

[5] Goalsetter has conceded that "the CPSA does not automatically apply to civil discovery," but asserts that "there are times and circumstances when the interests of the CPSC and objections to discovery align, and credence should be given to both." Reply Brief at 14.

that a federal agency action has somehow created a discovery privilege in this matter. We disagree.

[18] It is well-settled that: "[a] grant of privilege and the scope of that privilege are policy choices of the Legislature." *State v. Int'l Bus. Machines Corp.*, 964 N.E.2d 206, 210 (Ind. 2012). Although our legislature could have chosen to enact a discovery privilege corresponding to a FOIA determination, it has not done so.

[19] In *Scroggins v. Uniden Corp. of America*, 506 N.E.2d 83 (Ind. Ct. App. 1987), *trans. denied*, the Court addressed the issue of whether Indiana courts should create a common law discovery privilege, when neither federal nor state statutes recognized such a privilege. Scroggins had brought a products liability action claiming that Uniden's cordless telephone caused him to suffer a loss of hearing when it rang in his ear, and Scroggins sought discovery of communication between Uniden and the CPSC. *See id.* Uniden objected and sought a protective order on the basis that any communication between it and the CPSC was privileged and not subject to discovery. More specifically, Uniden argued that "failure to protect the self-critical analysis will deter open reporting and frustrate the strong federal interest." *Id.* at 84.

[20] The *Uniden* Court recognized that privileges are statutory in nature and that it is within the power of the legislature to create them, observing that "[m]ost privileges were unknown at common law and are particularly disfavored." *Id.* at 86. In directing the trial court to grant discovery of the requested documents,

accompanied by appropriate protective orders to prevent unnecessary publication of matters discovered, the Court stated:

> While the cases which apply the privilege denying discovery of a self-critical analysis make recitals to the effect that such privilege is necessary for open reporting and the success of the program, this recital is never explained nor demonstrated. It is a bald assumption. It occurs to us that if a manufacturer files a self-critical analysis which demonstrates that it was marketing a hazardous product, the CPSC would instantly order it to cease and desist. If the CPSC did not order it to desist, one may assume either that the hazard was not apparent, or that the CPSC was not doing its duty. Additionally, a manufacturer could not, with any justice, file a self-critical analysis reflecting the dangerous propensity of an article, knowingly continue to market the article, and then claim a privilege. We believe that a responsible manufacturer who discovered a dangerous article and filed a self-critical analysis reflecting the danger, would cease distribution of it, or at least be ordered to cease and desist by the CPSC. An irresponsible manufacturer would misrepresent the hazard in the first place. In essence, we are wholly unpersuaded that the privilege would appreciably aid the program. In any event it is a legislative matter for either Congress or our legislature. Neither body has created such a privilege, though they have demonstrated they know how. It is not the prerogative of this court to create one.

> Uniden argues that any discovery matter is addressed to the sound discretion of the trial court, and its ruling will not be disturbed absent a showing of abuse of discretion. We agree. However, here, the trial court denied discovery specifically on the basis of a privilege which we have held does not exist.

*Id.* Goalsetter argues that *Scroggins* is inapplicable because Goalsetter "is not relying on the self-critical analysis doctrine to which *Scroggins* was limited."

Appellant's Brief at 27.  Goalsetter also suggests, in a cursory manner, that *Scroggins* was wrongly decided.

[21]  Our review of *Scroggins* reveals that the opinion addressed the statutory nature of privileges in general.  In relying upon *Scroggins*, the trial court was not required to limit its application to self-critical analysis reports.  *See also Terre Haute Regional Hospital, Inc. v. Trueblood*, 600 N.E.2d 1358, 1360 (Ind. 1992) ("Indiana generally recognizes that privileges are statutory in nature and that it is within the power of the legislature to create them.")  Indeed, this Court has held that a trial court erred in relying upon "a rationale for applying a privilege in a particular situation" in the absence of a statute.  *Hulett v. State*, 552 N.E.2d 47, 48 (Ind. Ct. App. 1990), *trans. denied*.

[22]  The trial court was not empowered to create a common law privilege that materials withheld in a FOIA request are non-discoverable due to a federal interest.  Goalsetter has not shown that the trial court misapplied the law or otherwise abused its discretion.

## Work Product

[23]  Goalsetter asserts that the trial court's order "failed to address whether work product protection exists for materials prepared as part of Goalsetter's engagement with the CPSC."  Appellant's Brief at 29.  To the contrary, the order provides in part:

> The Court is reserving ruling on materials that Defendant asserts are subject to the attorney-client privilege.  This Court is very

> sensitive to documents and matters that may be protected by the attorney-client privilege. Based on the record before the Court at present, the Court does not agree with Plaintiffs that Defendant has waived the attorney-client privilege. However, "blanket claims of discovery privilege are not favored by Indiana courts." *Howard v. Dravet*, 813 N.E.2d 1217 (Ind. Ct. App. 2004). Thus, documents that Defendant maintains are protected by the attorney-client privilege are to be further sequestered by the Defendant and Defendant shall articulate sufficient information to Plaintiffs' counsel describing the nature and extend [sic] of the attorney-client privilege asserted and further hearing thereon may be held.

(Appealed Order at 4.)

[24] Work product is that which a party or the party's representative prepares, or that which is prepared for the party or party's representative, in anticipation of litigation or for trial. Ind. Trial Rule 26(B)(3). Goalsetter had presented to the trial court no log or accounting of specific work product documents, but rather it argued that everything in the files of independent counsel retained after the product recall was privileged work product. The trial court did not reject the blanket claim of privilege outright, but instead provided for sequestration of documents and permitted Goalsetter to request a hearing in the future to meet its burden of showing that some or all of the requested documents are work product. *See Burr v. United Farm Bur. Mut. Ins. Co.*, 560 N.E.2d 1250, 1254 (Ind. Ct. App. 1990) ("The threshold determination in any case involving an assertion of the work-product privilege is whether the materials sought to be protected from disclosure were in fact prepared in anticipation of litigation.") It is the party asserting the privilege who must establish that the materials were

prepared in anticipation of litigation rather than in the normal course of business. *TP Orthodontics, Inc. v. Kesling*, 15 N.E.3d 985, 995 (Ind. 2014). The trial court's discovery order, which anticipates further development of Goalsetter's factual claims of work product, if necessary, does not amount to an abuse of discretion.

## Conclusion

[25] Goalsetter possesses no privilege preventing disclosure in a state court discovery dispute based upon a federal agency refusal of disclosure in an FOIA context. The discovery order at issue is carefully crafted to limit dissemination of materials and permit further review of claimed work product materials. Goalsetter has not shown that the trial court abused its discretion in compelling the production of documents and denying Goalsetter's motion for a protective order.

[26] Affirmed.

Crone, J., and Pyle, J., concur.

ATTORNEYS FOR APPELLANT

Renee J. Mortimer
Scott B. Cockrum
Jessica L. Mullen
Corban J. Cavanaugh
Lewis Brisbois Bisgaard & Smith LLP
Highland, Indiana

ATTORNEYS FOR APPELLEE ESTATE OF NOLAN GERWELS

Charles P. Rice
Patrick D. Murphy
Murphy Rice
Mishawaka, Indiana


ATTORNEY FOR APPELLEE DICK'S SPORTING GOODS, INC.

Jennifer Kalas
Hinshaw & Culbertson LLP
Schererville, Indiana