

FILED

Jun 09 2026, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



I N T H E

# Court of Appeals of Indiana

Joshua Blair,

*Appellant-Respondent*

v.

Amber Fields (Blair),

*Appellee-Petitioner*

June 9, 2026

Court of Appeals Case No.
26A-DC-27

Appeal from the Johnson Superior Court

The Honorable Marla K. Clark, Judge

Trial Court Cause No.
41D04-2101-DC-29

**Opinion by Chief Judge Tavitas**
Judges Bradford and Felix concur.

**Tavitas, Chief Judge.**

## Case Summary

Joshua Blair ("Father") appeals the trial court's order granting a petition to modify custody and parenting time filed by Amber Fields ("Mother") regarding the parties' children. We affirm.

## Issues

Father presents two issues on appeal, which we expand and restate as:

    I.     Whether the trial court abused its discretion by denying his request for a continuance.

    II.    Whether the trial court abused its discretion by relying upon the GAL's report.

    III.    Whether the trial court abused its discretion by granting Mother primary physical custody of the parties' children.

## Facts

Mother and Father were married in February 2010 and had three children: B.B., born in 2011; J.B., born in 2015; and L.B., born in 2018 (collectively "the Children"). The parties' marriage was dissolved on March 29, 2021. The dissolution decree approved the parties' agreement for joint legal and physical custody of the Children, with parenting time on alternating weeks, unless the parties agreed otherwise. After the dissolution, both parties entered into new

relationships; Mother remarried, and Father lives with his fiancée and her two children.

[4] On March 7, 2025, Mother filed a verified petition for contempt in which she claimed that Father failed or refused to reimburse her for uninsured medical expenses; she also filed a verified petition to modify custody, parenting time, and child support. The trial court ordered the parties to participate in mediation. Although the parties agreed on several minor things, including the appointment of a GAL, the mediation did not successfully resolve the issues of contempt or child custody. On May 14, 2025, the trial court entered an order appointing an experienced attorney as the GAL.

[5] A final hearing was scheduled for September 29, 2025. As required by Rule 3.8 of the Indiana Guardian Ad Litem Guidelines ("GAL Guidelines"),[1] the GAL electronically filed her report ten days before the final hearing on Friday, September 19, 2025. The GAL's report was accepted by the clerk's office and placed on the chronological case summary ("CCS") on September 22, 2025. The GAL recommended that Mother have primary physical custody of the Children.

[6] Father filed a motion for a continuance on September 23, 2025, in which he claimed that he had not been timely served with the GAL's report and needed

---

[1] The GAL Guidelines were approved and adopted by our Supreme Court on October 17, 2024, and were effective January 1, 2025. *See* Order Adopting Guardian ad Litem Guidelines for Civil Family Law Cases, No. 24S-MS-1 (Ind. Oct. 17, 2024).

additional time to prepare. The trial court denied Father's motion on September 25, 2025, and noted that a continuance would delay the hearing by six months, which was not in the Children's best interests. The trial court held a hearing on Mother's petitions on September 29, 2025, as scheduled. At the hearing, Father's counsel objected to both the admission of the GAL's report and the GAL's testimony. The trial court overruled those objections and found the GAL's testimony to be instructive. The trial court took the matter under advisement.

[7] On December 11, 2025, the trial court issued an order providing in relevant part:

> 11. Father's fiancee has two children, aged five and seven, who reside with [Father and his fiancée].
>
> 12. Father's fiancee and her children moved in with Father about six months after Mother moved out of the home.
>
> 13. The GAL recommends that all children live primarily with Mother.
>
> 14. The Court finds GAL's testimony to be instructive and adopts the following GAL testimony as findings:
>
> • The children struggle at Father's home due to challenges with the blended family in the home.
>
> • The Blair children are well-mannered, well-behaved children.
>
> • The environment at Father's home is chaotic, and Father's fiancee's children struggle with behavioral issues in the home.

• The Blair children and Father's fiancee's children are not treated the same and do not have the same expectations of them, which causes confusion and upset for the Blair children. The other children dominate the environment and the activities in the home.

• Father's fiancee has, at times, used inappropriate language and yelling to discipline her children.

• The Blair children are scared to share their thoughts and feelings with Father for fear of hurting his feelings.

• [B.B.] is struggling with her transition to high school, anxiety, and being a teenager. She is struggling with her peers and friend groups.

• [B.B.] desires to spend more time with Mother, and she is concerned about her younger siblings at Father's house without her.

15. Father conceded that [B.B.] should live primarily with Mother.

16. Each of the Blair children shared similar reports about their life at Father's home.

17. The Blair children are negatively impacted by the environment at Father's house.

18. [B.B.] is required to babysit the younger children at Father's house, which makes her anxious, and her payment for this service is a point of contention between Father and [B.B.]

19. Father has, at times, failed to notify Mother when the children were sick, including one instance of a highly contagious condition, hand-foot-and-mouth disease.

20. [L.B.] takes daily medications; there are times that [L.B.] has returned to Mother's house from Father's home with pills in

her organizer that she should have taken while she was at Father's house.

21. Mother works in the children's school district and is capable of transporting them to and from school every day.

22. The children are well-adjusted to their current schools.

23. Both parents are equally involved in the children's schooling; both are involved in the children's extracurricular activities.

24. The children have positive, close, loving relationships with both parents.

25. The children are strongly bonded to one another.

* * * * *

32. **The children were very young at the time of the initial custody determination and are now in different developmental stages than they were. This is a substantial change.**

33. **The composition of both parties' households has also changed since the decree was entered.**

34. All of the children are now struggling to adjust to Father's household.

35. **It is in the children's best interest for Mother to have primary physical custody of the children,** and the Court hereby grants primary physical custody to Mother, subject to Father's parenting time, which shall be consistent with the Indiana Parenting Time Guidelines at a minimum and additionally as the parties can agree. . . .

Appellant's App. Vol. II pp. 11-15 (emphasis added). Father now appeals.

## Discussion and Decision

### I. The trial court did not abuse its discretion by denying Father's motion to continue.

[8] Father first claims that the trial court abused its discretion by denying his motion to continue, which was based on the allegedly-late filing of the GAL's report. A trial court's decision to grant or deny a motion to continue is generally subject to abuse of discretion review. *McClendon v. Triplett*, 184 N.E.3d 1202, 1209 (Ind. Ct. App. 2022) (citing *In re K.W.*, 12 N.E.3d 241, 243-44 (Ind. 2014)). When a trial court denies a party's motion for a continuance, there is a strong presumption that the trial court properly exercised its discretion. *In re N.K.*, 249 N.E.3d 607, 615 (Ind. Ct. App. 2024).

[9] Our Supreme Court has previously held that "'[a]n abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown **good cause** for granting the motion,' but 'no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial.'" *K.W.*, 12 N.E.3d at 244 (quoting *Rowlett v. Vanderburgh Cnty. Office of Fam. & Child.*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), *trans. denied*) (emphasis added). This reference to a showing of "good cause" appears to be based on former Indiana Trial Rule 53.5, which provided in relevant part: "Upon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence." (emphasis added).

[10] Effective January 1, 2025, former Trial Rule 53.5 was repealed, and motions to continue are now governed by Trial Rule 7(D). *See In re O.M.*, 266 N.E.3d 326, 330 n.5 (Ind. Ct. App. 2025). Father's motion to continue was filed on September 23, 2025, and was accordingly governed by Trial Rule 7(D), which provides:

> (1) A party must file a motion for continuance as soon after the cause for continuance or delay is discovered by the party seeking the same.
>
> (2) Any written motion to continue a matter must be filed pursuant to subdivision (B) and must include:
>
>> (a) A statement that the opposing party has no objection;
>>
>> (b) A statement that the opposing party objects; or
>>
>> (c) A statement that the opposing party's position is unknown, and the date, time, and method by which the moving party filing the motion attempted to obtain agreement and the result, or why such outreach was not possible.
>
> (3) If a party did not comply with subdivision (D)(2), a court may grant a motion for continuance only if the moving party certifies to the court, in writing, the efforts made to give notice and the reasons supporting the moving party's claim that actual notice should not be required.
>
> (4) A party's motion must include:
>
>> (a) the approximate amount of time needed to elapse before the matter can be heard, and,
>>
>> (b) a good faith estimate of the time needed for the rescheduled hearing or trial.

[11]  This new rule contains no reference to a showing of "good cause," but it appears to leave continuances to the discretion of the trial court, so long as the procedural requirements of the rule are met. *See* T.R. 7(D)(3) (stating that the trial court "may" grant a motion for continuance if the movant satisfies certain conditions); *Welch v. 1106 Traub Tr.*, 204 N.E.3d 243, 251 (Ind. Ct. App. 2023) (noting that use of the permissive word "may" indicates discretion to act).

[12]  Here, Father's motion to continue did include a statement that "[b]oth the GAL and Mother[']s attorney have been contacted and object to this request." Appellant's App. Vol. II p. 53. But it did not meet the other procedural requirements of Trial Rule 7(D)(4), as it did not include an approximation of the time Father needed until the hearing could be held, nor did it include an estimate of the time needed for the rescheduled hearing.

[13]  Even if we ignore the procedural deficiencies in Father's motion to continue, the trial court based its denial of Father's motion on the best interest of the Children. The trial court noted that, given the trial court's calendar, granting the continuance would delay resolution of a pending custody dispute by six months. The trial court was in the best position to weigh the impact of a continuance on the Children, and we will not second-guess the trial court's determination that a continuance was not in the Children's best interest.

[14]  Nevertheless, Father argues that the trial court abused its discretion by denying his motion for continuance because the GAL's report was filed shortly before midnight on a Friday, which effectively gave him less than ten days to prepare,

as his counsel did not see the report until the following Monday morning. Father argues that the ten-day deadline should be counted using business days instead of calendar days, because e-filing has made after-hours filings possible in a manner that the rules and statutes did not contemplate. Father argues that the trial court's denial of his motion to continue deprived him of the opportunity to respond to the GAL's report.

[15] Rule 3.8 of the GAL Guidelines provides, "If a written report is ordered, a GAL must provide the report to the court and the opposing parties or their counsel a minimum of ten (10) days prior to the hearing, unless the time requirement is waived by all parties or good cause is shown."[2] Father would have us effectively amend the GAL Guidelines by reading the word "business days" into Rule 3.8 simply because he thinks the current rule provides insufficient time. But Rule 3.8 does not say "ten business days"; it merely says, "ten days," which, absent any indication to the contrary, means ten calendar days. *See* Ind. Trial Rule 6(A) (setting forth method of calculating days using

---

[2] Indiana Code Section 31-17-2-12(a) similarly provides: "In custody proceedings **after evidence is submitted** upon the petition, if a parent or the child's custodian so requests, the court may order an investigation and report concerning custodial arrangements for the child." (emphasis added). The investigation may be conducted by a GAL. *Id*. § 12(b). Once the investigation is completed, "[t]he court shall mail the investigator's report to counsel and to any party not represented by counsel at least ten (10) days before the hearing. . . ." Here, however, the trial court ordered the GAL's report **before** evidence was submitted. *See In re Paternity of M.J.M.*, 766 N.E.2d 1203, 1207 (Ind. Ct. App. 2002) (holding that Indiana Code Section 31-17-2-1 was inapplicable where trial court ordered custody evaluation report before evidence was submitted) (citing *Deasy-Leas v. Leas*, 693 N.E.2d 90, 94 (Ind. Ct. App. 1998), *trans. denied*). In practice, trial courts read this as also applying to cases in which the GAL is appointed **before** the evidence is submitted. Indeed, it is a common, if not universal, practice to appoint a GAL before custody hearings. We encourage our General Assembly to consider amending this statute to require the ten-day notice of the GAL's report even if the evidence is submitted after a GAL is appointed.

calendar days).  We are not at liberty to amend the GAL Guidelines adopted and promulgated by our Supreme Court.

[16]     Father also argues that the allegedly-late electronic filing of the GAL's report, and the trial court's denial of his motion to continue, gave him insufficient time to prepare, thereby violating his due process rights.  We disagree.  Electronic filing has made it easier, not harder, for parties and their attorneys to receive timely, automated notice of filings.  The fact that Father's counsel did not personally view the GAL's report until the Monday after the Friday on which it was filed is not the relevant question; the question is whether it was provided to the parties ten days prior to the hearing.  Here, the GAL's report was filed electronically, and, therefore, was available to the parties within this timeline.  Father's counsel still had seven days to review the report and prepare for the hearing.

[17]     More importantly, Father had the opportunity to vigorously cross-examine the GAL at the final hearing.  Indeed, Father challenged the GAL regarding the relatively short amount of time she visited both parties' homes; her failure to interview Father's fiancée or Mother's husband; her reliance on an allegedly unauthenticated video[3]; her conclusions regarding hand, foot, and mouth

---

[3] Father argues that the GAL relied on a video recording that neither he nor his counsel had seen and that he had no opportunity to investigate the authenticity of this video.  But the video itself was not admitted into evidence.  Furthermore, Father does not explain what his investigation of the video would have revealed, or whether or how the video affected the GAL's conclusions, which were based on the GAL's visits to the parties' homes, her interviews with the Children, and her direct observations.

disease;[4] and other inconsistencies in her testimony regarding her investigation. *See Bowman v. Bowman*, 686 N.E.2d 921, 925 (Ind. Ct. App. 1997) (rejecting due-process claim where party received GAL's report ten days before the hearing and had the opportunity to cross-examine GAL); *cf. Jendreas v. Jendreas*, 664 N.E.2d 367, 370 (Ind. Ct. App. 1996) (finding due process violation where trial court accepted a psychologist's custody evaluation report but then denied the opposing party's request for a hearing at which she could examine the recommendations contained in the report), *trans. denied*; *Brown v. Brown*, 463 N.E.2d 310, 314 (Ind. Ct. App. 1984) (finding prejudice where final home study report was not submitted until the day after the hearing, leaving the father without access to the report during the proceedings).

[18] Father argues that *Bowman* is distinguishable because his cross-examination was necessarily limited by his insufficient preparation time. Father claims he had only five days to identify and subpoena witnesses, obtain records, and develop his questioning. Again, however, the GAL's report was timely filed.

---

[4] In his reply brief, Father claims that, had he had more time, he could have called a physician to counter the GAL's determination that hand, foot, and mouth disease required medical attention. Father claims that the CDC indicates that a child with this disease may attend school unless the child has a high fever. Father himself testified at the hearing that this illness had been spreading at the Children's school for several weeks and that none of the Children ever ran a high fever. Father's counsel cross-examined the GAL on this issue and questioned her conclusions thereon. Father has not explained how a physician's testimony would have altered the trial court's ultimate custody determination. *See* Ind. App. Rule 66(A) (providing that court on appeal will not reverse a trial court's ruling unless it affects a party's substantial rights).

[19]     Under these circumstances, we cannot say that the trial court abused its discretion by denying Father's motion for a continuance, nor can we say that the denial of his motion for a continuance violated Father's due process rights.

## II.  The trial court did not abuse its discretion by relying upon the GAL's report

[20]     In a related argument, Father claims that the trial court abused its discretion by relying on the GAL's report and the GAL's testimony.  A trial court has discretion regarding the credibility of and weight given to a GAL's report.  *See Shao v. Li*, 276 N.E.3d 89, 98 n.1 (Ind. Ct. App. 2026) (noting that trial courts have discretion to rely on a GAL's report); *Reel v. Reel*, 231 N.E.3d 915, 925 (Ind. Ct. App. 2024) (noting that trial court is not required to accept a GAL's opinions).

[21]     Father does not challenge the GAL's qualifications but, instead, challenges only the thoroughness of her investigation.  He notes that the GAL did not interview either Father's fiancée or Mother's husband; did not review medical records; did not meet with the Children in a neutral setting; and spent only two and one-half hours visiting the parties' homes.

[22]     Father complains about what the GAL did not do, but he does not explain what additional evidence might have come to light had the GAL done more.  "[T]he GAL was serving as an officer of the trial court, which was in the best position to determine the value of the GAL's volunteer service on this case."  *Reel*, 231 N.E.3d at 925.  If the GAL's investigation was lacking concerning Father's

fiancée, Father was free to present such evidence himself. *See id*. Indeed, Father's fiancée testified at the hearing, giving Father the opportunity to counter the GAL's testimony. Father also extensively cross-examined the GAL regarding her report. As we stated in *Reel*, "it may well be that any GAL could have done more. But [m]other has failed to demonstrate that the GAL failed to meet her statutory duties." *Id*. The GAL, as an advocate for the child(ren), has discretion to determine the scope and course of the investigation as it relates to the best interest of the child(ren).

[23] Father also complains that the GAL failed to review various materials, including medical, DCS, and court records, the individualized education plans of the younger two children, and the mental health records of B.B. Father claims that these failures violate several of the GAL Guidelines and that the GAL's report should, therefore, have been excluded. But Father misstates the GAL Guidelines.

[24] Commentary to GAL Guideline Rule 3.10 states: "The role of the GAL may vary depending on the court's order of appointment, the issues in the case, and the type of case. In addition to representing and protecting the best interests of the child, the roles and responsibilities of a GAL can, but will not always, include the following." (emphasis added). The commentary then lists several examples of possible relevant data to collect or actions a GAL might consider during the GAL's appointment. Father's arguments amount to little more than a request that we reweigh the evidence, which we cannot do. Father cites no relevant authority that would require exclusion of the GAL's report.

Father also contends that the GAL was biased against him because she reached negative conclusions about his fiancée without conducting any interviews with her. We note again, however, that Father's counsel actively cross-examined the GAL on this very issue. Father's counsel also questioned the GAL regarding the fact that she made only a single visit to Father's home and relied on the unauthenticated video. Still, the trial court credited the GAL's testimony. We cannot question that credibility determination on appeal. *See Russell*, 223 N.E.3d at 713. In short, we conclude that the trial court did not abuse its discretion by relying on the GAL's report and the GAL's testimony.

## III. The trial court did not abuse its discretion by modifying custody.

Lastly, Father claims that the trial court erred by granting Mother's petition to change custody and granting Mother primary physical custody of the two younger Children.[5] Where, as here, neither party requested special findings under Indiana Trial Rule 52(A), and the trial court entered its findings and conclusions sua sponte, we apply a two-tiered standard as to issues covered by the findings: "whether the evidence supports the findings, and whether the findings support the judgment." *Hahn-Weisz v. Johnson*, 189 N.E.3d 1136, 1141 (Ind. Ct. App. 2022) (citing *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014)). We will reverse the findings only if they are clearly erroneous. *Id.* (citing *In re Adoption of I.B.*, 32 N.E.3d 1164, 1169 (Ind. 2015)). We review any remaining issues using the general judgment standard, under which we will affirm the

---

[5] Father conceded that Mother should have primary physical custody of B.B., the oldest child.

judgment "if it can be sustained on any legal theory supported by the evidence." *Id.* (citing *S.D.*, 2 N.E.3d at 1287). We neither reweigh the evidence nor judge the credibility of the witnesses, and we review the trial court's legal conclusions de novo. *Id.* (citing *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013)).

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Trial courts are enabled to assess credibility and character through both factual testimony and intuitive discernment, and, therefore, are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.
>
>> [T]here is a well-established preference in Indiana for granting latitude and deference to our trial judges in family law matters. Appellate courts are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence. . . .
>
> Accordingly, we review a trial court's custody determination for an abuse of discretion.

*Russell v. Russell*, 223 N.E.3d 708, 713 (Ind. Ct. App. 2023) (citations and internal quotation marks omitted).

[27]     The modification of physical and legal custody is governed by Indiana Code Section 31-17-2-21, which provides in relevant part:

The court may not modify a child custody order unless:

(1) modification is in the best interests of the child; and

(2) there is a substantial change in one (1) or more of the factors that the court may consider under [Indiana Code Section 31-17-2-8] and, if applicable, [Indiana Code Section 31-17-2-8.5].

Indiana Code Section 31-17-2-8 provides that the trial court shall consider all relevant factors, including:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent. . . .

[28] Father claims that the trial court abused its discretion by granting Mother primary physical custody of the Children because there was no evidence that the Children had been harmed by the current custody arrangement. But the child custody modification statute does not require that a child be harmed before custody may be modified. Instead, "all that is required to support modification of custody . . . is a finding that a change would be in the child's best interests, a consideration of the factors listed in I.C. § 31-17-2-8, and a finding that there has been a substantial change in one of those factors." *McDaniel v. McDaniel*, 150 N.E.3d 282, 289 (Ind. Ct. App. 2020) (quoting *Nienaber v. Nienaber*, 787 N.E.2d 450, 456 (Ind. Ct. App. 2000), *trans. denied*. Father's arguments regarding a lack of harm are, therefore, inapposite.

[29] Father also claims that "[t]here was no evidence at all in the record that the children are having any issues either physical or emotional." Appellant's Br. p. 27. We cannot agree with this characterization. The GAL testified that the Children's emotional relationship with Father was "strained," Tr. Vol. II p. 15, and that they did not feel comfortable sharing their concerns with Father out of fear of hurting his feelings. The Children were negatively impacted by the "chaotic" environment at Father's home, which included Father's fiancée using inappropriate language to discipline her own children. Appellant's App. Vol. II p. 12. Father's fiancée's children were held to a different standard than Father's Children, which confused and upset the Children.

[30] Father correctly notes that a change in circumstances sufficient to support a modification of custody "must be judged in the context of the whole

environment, and the effect on the child is what renders a change substantial or inconsequential." *McDaniel*, 150 N.E.3d at 290. But we disagree with Father that there has been no such change in circumstances here. To the contrary, since the dissolution order was entered in 2021, the Children are significantly older, and there have been significant changes in Father's household. First and foremost, the addition of Father's fiancée and her two children, which, as noted above, had a negative impact on the Children. J.B. even shared his difficulties with a schoolmate.

[31] Father also argues that the trial court's own findings do not support the court's decision to modify custody. Father notes that the trial court found that both Mother and Father have close, loving relationships with the Children; that both parents are equally involved in schooling and extracurricular activities; and that both are fit and proper parents. Father contends that these findings are inconsistent with modifying custody. But the custody modification statute does not require a finding that one parent is unfit; it simply requires that there be a substantial change in the circumstances and that the modification be in the children's best interest. *McDaniel*, 150 N.E.3d at 289. Thus, both parents can be fit and loving parents, yet the circumstances still warrant a modification of custody. Moreover, the trial court's favorable findings about Father do not negate its unfavorable findings about Father's household environment.

[32] Lastly, Father again attacks the adequacy of the GAL's reasoning and her investigation. But this argument is little more than a request that we reweigh the evidence, which we cannot do. Given our highly deferential standard of

review in child custody matters, we cannot say that the trial court abused its discretion by modifying custody in favor of Mother.

## Conclusion

[33] The trial court did not abuse its discretion by denying Father's request for a continuance. Nor did the trial court abuse its discretion by relying upon the GAL's report and testimony. Lastly, the trial court did not abuse its discretion by granting Mother's request to modify custody and granting Mother primary physical custody of the parties' Children. We, therefore, affirm the trial court.

[34] Affirmed.

Bradford, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

Denise F. Hayden
Lacy Law Office, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Michael R. Auger
Franklin, Indiana